**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

_____
                                          )
**DANNIE R. CARTER, et al.,**             )
                                          )
    **Plaintiffs,**                       )
                                          )
    v.                                    )    **CIVIL NO. 3:07CV651**
                                          )
**COUNTRYWIDE HOME**                      )
**LOANS, INC., et al.,**                  )
                                          )
    **Defendants.**                       )
_____)

**MEMORANDUM OPINION**

    This matter is before the Court on Defendant Samuel White's ("White") and Defendant Countrywide Home Loans, Inc.'s ("Countrywide") motions to dismiss the Second Amended Complaint. For the reasons set forth herein, White's motion will be GRANTED IN PART and DENIED IN PART, and Countrywide's motion will be DENIED.

                                                  **I.    Factual Background**

    Dannie and Dorothy Carter ("Plaintiffs") owned the subject property located at 1771 Altman Road, Richmond, Virginia, 23228 ("the property"). (Countrywide's Mem. in Supp. of Mot. to Dismiss Am. Compl. (Def.'s Mem.) at 4.) This case arises out of a dispute over a mortgage on the property. Plaintiffs became delinquent on their mortgage payments and accumulated approximately $15,000 in arrearages. (Countrywide's Mem. in Supp. of Mot. to Dismiss Original Compl. (Def.'s Original Mem.) at 3.) As a result, on November 7, 2006, Countrywide began foreclosure proceedings. (Am. Compl. at 3.)

Plaintiffs originally filed this action in state court, alleging that Countrywide did not properly credit payments that Plaintiffs made on their mortgage. See Compl., Carter v. White, No. CL06-2932, at 23 (Va. Cir. Ct.). In the state circuit court action, Plaintiffs sought an injunction against Defendants Countrywide and White (the trustee in charge of the foreclosure proceedings) to prevent each from carrying out a foreclosure sale of Plaintiff's property (or otherwise disposing of the property during the pendency of the suit), and asking the court to reinvest legal title and possession of fee simple interest in the property back to Plaintiffs. (Original Compl. ¶ 55.) On November 30, 2006, the state court issued an order staying the foreclosure sale on the property until December 20, 2006. (Def.'s Mem. at 5.) The state court further ordered that if Plaintiffs were to satisfy their mortgage obligation by the December date, title would remain with them. (Am. Compl. at 3.) Plaintiffs failed to pay off the indebtedness by the specified date, and, as a result, the foreclosure sale ensued. (Am. Compl. at 3-4.) The United States, by its agency, the Department of Housing and Urban Development ("HUD"), obtained title to the property by its purchase of the property that is secured by the deed of trust held by the Department of Veterans Affairs ("VA"), another agency of the United States. (Original Compl. ¶¶ 33, 47.)

## II. Procedural History

On September 17, 2007, Plaintiffs, proceeding *pro se*, filed a complaint in the Circuit Court of Henrico County, Virginia, alleging, *inter alia*, gross negligence and misconduct, violation of the Fair Debt Collection Practices Act ("FDCPA"), and wrongful or fraudulent conveyance of property. (United States' Notice of Removal, Ex. 1 (Pl.'s Sep. 17, 2007 State Court Compl.).) The then-Defendant, the United States, on behalf of the Secretary of HUD and the VA, filed a notice of removal with this Court on October 22, 2007. (United States' Notice of

Removal.) The United States then filed a motion to dismiss the Complaint soon after the case was removed to this Court. Additionally, the United States contemporaneously filed a Notice of Substitution of the United States of America as the proper party defendant in lieu of the Secretary of HUD and the VA. (Notice of Substitution at 2.) Countrywide also filed a motion to dismiss the Complaint.[1]

After the original motion to dismiss was filed, and Plaintiffs retained counsel, Plaintiffs moved to amend their complaint. (Pl.'s Mot. to Am./ Correct Compl.) The Court granted the motion. (Jan. 23, 2008 Order.) The first Amended Complaint contained four claims: two claims against Countrywide (pursuant to the Real Estate Settlement Procedures Act ("RESPA") and the FDCPA), and two claims against White (FDCPA and breach of a fiduciary duty). (Am. Compl. ¶¶ 24-41.) The Amended Complaint also sought an order reinvesting Plaintiffs with title to the property, as well as granting them a fee simple possessory interest in the property. (Am. Compl. at 8.) The United States thereupon filed a revised motion to dismiss in response to the Amended Complaint. The Court granted the motion and the United States was dismissed as a party to the action. (Mar. 20, 2008 Mem. Op.) Defendants Countrywide and White also filed motions to dismiss the Amended Complaint. (White's Mot. to Dismiss; Countrywide's Mot. to Dismiss Am. Compl.)

Plaintiffs then filed a second motion to amend their complaint. (Pl.'s Second Mot. to Am./ Correct the Am. Compl.) The Court granted Plaintiffs' motion, but only to the extent of allowing Plaintiffs to add the RESPA claim arising from a March 7, 2006, letter from Plaintiffs'

---

[1] Countrywide's first motion to dismiss the Complaint was denied without prejudice due to Countrywide's failure to provide the then-*pro se* plaintiffs with proper Roseboro notice. (Nov. 27, 2007 Order.) White did not file a motion to dismiss the original Complaint.

3

counsel to Defendant Countrywide "complaining of an escrow shortage in their mortgage account and demand[ing] documentation to support the alleged shortage" (Qualified Written Request or QWR). (Second Am. Compl., ¶ 10.) The Court also allowed an amendment to add additional citation to Virginia Code §§ 55-59.4 and 26-15, which pertains to the alleged breach of fiduciary duty. However, the Court denied Plaintiffs' motion as to Plaintiffs' RESPA claim based on a second QWR, dated December 13, 2007, that was sent *after* the Plaintiff had filed their original motion for leave to amend, the Court finding that the some four month delay between the time the December QWR was sent and the Plaintiffs' second motion for leave to amend was not excusable. (May 19, 2008 Order.) The Second Amended Complaint contained the following five counts: Count I: RESPA claim against Countrywide; Count II: FDCPA claim against Countrywide; Count III: FDCPA claim against White; Count IV: Breach of Fiduciary Duty claim against White; and, Count V: Declaratory Judgment claim (which has been dismissed). Second Am. Compl. at 4-9.) Countrywide thereupon filed a motion to dismiss the Second Amended Complaint in which it adopted and incorporated by reference the points and authorities presented in its Memorandum in Support of its earlier motion to dismiss Plaintiffs' first amended complaint and Countrywide's Reply Memorandum. White did not file a motion to dismiss in response to Plaintiff's Second Amended Complaint. The Court will nevertheless construe White's initial motion to dismiss the Amended Complaint as his response to Plaintiff's Second Amended Complaint.

### III. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.

1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts have long cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Bell Atlantic Corp., the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." 127 S. Ct. at 1964-65 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," and one that is "plausible on its face," rather than merely "conceivable." Id. at 1965, 1974 (citations omitted). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. Duport de Nemours & Co., 324 F. 3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F. 3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).

## IV. Analysis

### 1. The Rooker-Feldman doctrine will not bar Plaintiffs' claims against Countrywide.

Countrywide argues that the Court lacks subject matter jurisdiction over the controversy because the Rooker-Feldman doctrine bars Plaintiffs' claims. (Def.'s Mem. at 6.) The Rooker-Feldman doctrine provides that "'lower federal courts generally do not have [subject matter] jurisdiction to review state-court decisions.'" Safety-Kleen, Inc. (Pinewood) v. Wyche, 274 F.3d 846, 857 (4th Cir. 2001) (quoting Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997)). The United States Supreme Court is the only federal court with appellate jurisdiction over state court judgments. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005) (citing 28 U.S.C. § 1257). "The Rooker-Feldman bar extends not only to issues actually decided by a state court but also to those that are 'inextricably intertwined with questions ruled upon by a state court.'" Shooting Point, L.L.C. v. Cumming, 368 F.3d 379, 383 (4th Cir. 2004) (quoting Plyler, 129 F.3d at 731). The Supreme Court has held that application of the Rooker-Feldman doctrine is limited to those "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp., 544 U.S. at 284.

The controlling question in a Rooker-Feldman analysis is "whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision." American-Reliable Ins. Co. v. Stillwell, 336 F. 3d 311, 316 (4th Cir. 2003). Countrywide contends that "[a]lthough Plaintiffs bring their claims under RESPA and the FDCPA, this case is nothing more than an action (1) challenging the validity of the foreclosure,

(2) seeking damages allegedly arising out of the foreclosure, and (3) seeking an order reversing the foreclosure." (Def.'s Mem. at 7.) In support of its arguments, Countrywide points to a number of statements by Plaintiffs in their filings with the Court in which Plaintiffs repeatedly complain that the foreclosure and sale of their home was improper and unlawful. Accordingly, Countrywide contends that Plaintiffs' RESPA and FDCPA claims are "inextricably intertwined" with the state court's ruling permitting the foreclosure sale. See Cumming, 368 F.3d at 383 ("A federal claim is inextricably intertwined with a state court decision if success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.") (internal quotations and citations omitted).

Countrywide cites to the holding in Byrd v. Homecomings Financial Network in support of its argument that Plaintiffs' claims are barred by Rooker-Feldman. 407 F. Supp. 2d 937 (N.D. Ill. 2005). Byrd involves facts that are substantially similar to those in the case before this Court in that the plaintiff in Byrd obtained a mortgage, and after defaulting on three months of payments, the state court entered a Judgment of Foreclosure and Sale. Id. at 939-40. The foreclosure proceedings were stayed pending the plaintiff's Chapter 13 petition in the relevant United States Bankruptcy Court; however, following the bankruptcy court proceedings, the foreclosure sale was conducted. Id. at 940-41. According to the court in Byrd, the plaintiff subsequently filed suit in the United States District Court "attempting to collaterally attack the state court's judgment by arguing that the foreclosure was improper for a laundry list of reasons, including [the defendant's] alleged violations of the FDCPA [and] RESPA . . . ." Id. at 943. The district court held that the plaintiff was merely attempting to redress the injury caused by the foreclosure sale. Id. at 944. The court held that the Rooker-Feldman doctrine applied and the

court did not have subject matter jurisdiction to hear the plaintiff's claims because "[a]bsent the state court's judgment of foreclosure and subsequent confirmation of the sale of [the plaintiff]'s property, [the plaintiff] would not now have the injury she seeks to redress." Id.

However, the Byrd holding is distinguishable from the case before this court. In this Court's March 20, 2008, Memorandum Opinion, the Court held that any remedy sought by Plaintiffs that was an attempt to have this Court restore title to Plaintiffs is "clearly barred under Rooker-Feldman because it would necessarily mean that this Court would be reversing the subject state court decision." (Mar. 20, 2008 Mem. Op.) Rooker-Feldman does not apply to Plaintiffs' outstanding claims however, because Plaintiffs are not asking the Court to relitigate the state court's judgment. Although Plaintiffs' current claims arise from the same series of transactions as those litigated in state court, Plaintiffs are now claiming that Countrywide failed to respond to Plaintiffs' qualified written requests as required under RESPA. (Pls.' Resp. In Opp'n to Mot. to Dismiss Second Am. Compl. at 2.) Such a claim has never been previously adjudicated in any court, state or federal. Furthermore, the foreclosure proceedings have no bearing on the adjudication of the alleged federal RESPA violations. (Id.) Likewise, Plaintiffs' claims of violations of the FDCPA pertain to alleged violations by Defendant regarding the collection of the mortgage debt serviced by Defendant. Therefore, a favorable decision for Plaintiffs on their RESPA or FDCPA claims would consist of monetary damages and would not be "at odds with the result reached in the state court[s]," which allowed the foreclosure sale to proceed. Cumming, 368 F.3d at 384. Accordingly, Plaintiffs' claims against Countrywide are not barred by the Rooker-Feldman doctrine.

**2.      The Rooker-Feldman doctrine will not bar Plaintiffs' claims against White.**

White also argues that the Court lacks subject matter jurisdiction because of the Rooker-Feldman doctrine. (White's Br. in Supp. of Mot. to Dismiss Am. Compl. at 4). The foregoing Rooker-Feldman analysis applies to White as well. White specifically argues that Plaintiffs had the opportunity to raise the same issues in state court. (Id.) However, the ability to raise claims in state court does not necessarily invoke Rooker-Feldman issues as such claims were not adjudicated before the state court, and the relief currently sought by Plaintiffs, if granted, would not require this Court to overturn the state court's judgment.

In support of his argument, White cites Taylor v. Federal National Mortgage Association, 374 F.3d 529. However, as with the Byrd precedent, the case is distinguishable from the case currently before this Court. The Taylor court, like this Court, held that the plaintiff's request for the recovery of her home was tantamount to a request to vacate the state court's judgment and was therefore barred by Rooker-Feldman. The Taylor court went on to state that although the plaintiff's federal claims sought money damages, such claims were barred by Rooker-Feldman because the monetary damages claimed were "compensatory damages in the amount of the value of her home plus 10% interest per annum and punitive damages." Id. at 534. Therefore, the court held that Rooker-Feldman applied, not because the plaintiff was barred from asserting federal claims, but rather because the fact that the plaintiff was "claiming compensatory damages in the amount of the value of her home (plus interest)" and that "demonstrate[d] that her asserted injury is the loss of her home due to the Defendants' conspiracy to deprive her of her home, not an independent injury arising from acts of the Defendants." Id. Accordingly, Taylor is factually distinguishable from the case before this Court because, as noted in regard to the claims against Countrywide, the claims against White are independent from the state court

judgment and are not, as in Taylor, a disguised appeal of that judgment. Accordingly, White's argument that Plaintiffs' claims are barred by the Rooker-Feldman doctrine must fail.

### 3. *Res judicata* will not bar Plaintiffs' claims against Countrywide.

The doctrine of *res judicata* prohibits parties from relitigating issues that were decided in a prior suit, as well as issues that could have been raised in the prior lawsuit. See City of Va. Beach v. Harris, 523 S.E.2d 239, 243 (Va. 2000). Countrywide argues that the *res judicata* doctrine bars Plaintiffs' claims. (Def.'s Mot. to Dismiss Second Am. Compl. at 9; Def.'s Mem.). Under Virginia law, four elements must be met to establish res judicata: (1) the remedies sought must be identical; (2) the causes of action must be identical; (3) the parties must be identical; and, (4) the quality (capactiy) of the persons for or against whom the claim is made must be identical. See Wright v. Castles, 349 S.E.2d 125, 128 (Va. 1986) (citing Mowry v. City of Va. Beach, 93 S.E.2d 323, 327 (Va. 1956)). Additionally, the prior judgment must have been final and based on the merits of the action. See Allen v. McCurry, 449 U.S. 90, 94 (1980) (citing Cromwell v. County of Sac, 94 U.S. 351, 352 (1896)).

Countrywide argues that all four elements are satisfied. (Def.'s Mot. to Dismiss Second Am. Compl. at 9; Def.'s Mem.) Countrywide states that Plaintiffs seek the same relief in both actions – an injunction preventing Defendants Countrywide and White from disposing of the property and an order reinvesting legal title to Plaintiffs. Id. Countrywide also alleges that the causes of action are identical in both actions. Id. In this regard, Countrywide cites K&L Trucking Co., Inc. v. Thurber, 377 S.E.2d 299, 302 (Va. 1985), for the proposition that a cause of action for the purposes of *res judicata* is "an assertion of particular legal rights which have arisen out of a definable factual transaction." (Countrywide's Mot. to Dismiss Second Am.

Compl. at 9; Def.'s Mem.)  Accordingly, Countrywide alleges that the foreclosure of Plaintiffs' mortgage is the factual transaction from which both claims arise.  Id.  Countrywide notes further that the parties are the same in the current action as in the previous state court action, as well as the quality of the persons against for and against whom the *res judicata* claim is alleged.  Id.

However, two elements necessary to establish *res judicata* are not met in this case.  The relief sought by Plaintiffs is not identical, for in the state court proceedings the Plaintiffs sought injunctive relief, whereas in the present action, Plaintiffs seek monetary damages.  An injunction preventing a home foreclosure is legally distinct from claims seeking monetary damages under federal statutes.[2]  Additionally, the causes of action asserted are not identical.  In the proceedings before this Court, Plaintiffs raise claims pursuant to RESPA, which Plaintiffs did not raise in the previous state court proceedings, and under the FDCPA, which was raised, but not adjudicated in the state court action.

The elements of *res judicata* are therefore not established because the relief sought in the two proceedings is different.  Accordingly, Plaintiffs' claims against Countrywide are not barred by the doctrine of *res judicata*.

### 4. Res judicata does not bar Plaintiffs' claims against White.

White also argues that the *res judicata* doctrine bars the Court from hearing the controversy.  (White's Br. at 6.)  The foregoing *res judicata* analysis relevant to Countrywide also applies to White.  Accordingly, Plaintiffs' claims against White are not barred by the doctrine of *res judicata*.

---

[2] This element of *res judicata* would be established if Plaintiffs were seeking to be reinvested with title.  As previously discussed, Plaintiffs are no longer seeking such relief.

### 5. Plaintiffs' RESPA claim against Countrywide is sufficient to preclude dismissal.

In Count One of the Second Amended Complaint, Plaintiffs allege that Defendant Countrywide violated RESPA. Specifically, Plaintiffs cite 12 U.S.C. § 2605(e) - which relates to the duty of a loan servicer to respond to borrower inquiries – and they contend that Countrywide failed to respond appropriately to the letters Plaintiffs sent on March 7, 2006, and January 11, 2007. The relevant statutory provision provides as follows:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A).

The statute defines "qualified written request" as:

> [A] written correspondence . . . that -- (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

12 U.S.C. § 2605(e)(1)(B).

Upon receiving a "qualified written request," the statute directs a loan servicer, within 60 days, to make corrections to the borrower's account, or to conduct an investigation of the borrower's account. 12 U.S.C. § 2605(e)(2)(A)-(C). The investigation must result in a statement of the reasons for which the servicer believes the account of the borrower is correct,

the production of information requested by the borrower, or an explanation of why the information requested is unavailable. Id. Additionally, the loan servicer must provide "the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(2)(B)(ii). Plaintiffs characterize the March 7, 2006, and January 11, 2007, letters as "qualified written requests."

### a. The March 7, 2006 Letter

The March 7, 2006, letter was sent to Defendant Countrywide complaining of an escrow account shortage in Plaintiff's mortgage account and demanding documentation to support the alleged shortage. (Second Am. Compl. ¶ 10.) In its Motion to Dismiss Plaintiffs' Second Amended Complaint, "Countrywide adopts and incorporates by reference the points and authorities presented in Countrywide's Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Amended Complaint and Countrywide's Reply Memorandum in Support of its Motion to Dismiss Plaintiff' Amended Complaint." (Defs.' Mot. to Dismiss Pls.' Second Am. Compl. at 1.) However, neither of those submissions address the March 7, 2006, letter.

Taking as true the factual allegations set forth in the Second Amended Complaint, Plaintiffs' March 7, 2006, letter qualifies as a "Qualified Written Request" under RESPA. Plaintiffs allege that the letter was sent by their agent (counsel Jeffrey M. Zwerdling) to their loan servicer (Defendant Countrywide). (Second Am. Compl. ¶ 10.) Plaintiffs further allege that in its response to the March 7, 2006, letter, Countrywide "failed or refused to provide an adequate breakdown or explanation of charges and payment postings or to conduct a meaningful investigation of [Plaintiffs'] request." (Second Am. Compl. ¶ 11.) Such allegations satisfy the elements of a claim under RESPA, 12 U.S.C. § 2605(e)(1)-(2).

### b.     The January 11, 2007 Letter

The January 11, 2007, letter was sent to Defendant White, and in it, Plaintiffs contested the amount claimed due and owing on the mortgage and requested a breakdown of the payoff amount. (Second Am. Compl. ¶ 19.) Countrywide contends that Plaintiffs' RESPA claim fails because the letter was not mailed to a loan "servicer" as required by the statute. (Defs.' Mot. to Dismiss Am. Compl. at 10-11.) Countrywide cites case law for the proposition that "no duty is triggered if the borrower sends the request to some other entity," and argues that White is some other entity, separate from Countrywide, such that any letter sent to him was not a "qualified written request." Id.

Under RESPA, "'servicer' means the person responsible for servicing a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). Citing Griffin v. Citifinancial Mortgage Co., Inc., No. 3:05CV1502, 2006 WL 266106 (M.D. Pa. Feb. 1, 2006), Countrywide argues that it has no duty to respond to a letter sent to its trustee, Defendant White. (Defs.' Mot. to Dismiss Am. Compl. at 10.) In Griffin, the plaintiffs were mortgagees whose counsel had sent multiple requests to the defendant's bankruptcy attorney. 2006 WL 266106, at *1. In granting the defendant's motion to dismiss, the Griffin court held that the request sent to the bankruptcy attorney did not give rise to a RESPA claim because the "servicer's outside counsel," and not the servicer itself, received the request. Id. at *2. While the holding in Griffin indicates that requests sent to certain entities that are tangentially related to a servicer will not trigger a duty to respond under RESPA, it is not instructive as to whether a lender's trustee falls within the statutory meaning of "servicer."

Countrywide also cites <u>Parker v. Long Beach Mortgage Co.</u>, No. 06-cv-2002, 2006 WL 2868983 (E.D. Pa. Oct. 3, 2006), to support its argument that a letter sent to *any* entity other than Countrywide cannot be a "qualified written request" under RESPA. (Defs.' Mot. to Dismiss Am. Compl. at 11.) Countrywide's interpretation of <u>Parker</u>, however, ignores significant facts that distinguish that case from the present one. In <u>Parker</u>, the plaintiffs sought to assert RESPA claims against a certain defendant for failure to respond to a "qualified written request" that the plaintiffs had sent to the defendant mortgage company. 2006 WL 2868983, at *3. The plaintiffs claimed that because the letter was attached to the Complaint as an exhibit, that the defendant should have been aware of its existence. <u>Id.</u> In response, the court held that "[a]n exhibit, attached to a complaint, addressed to a different party, can hardly be said to be a 'qualified written request' under RESPA that requires response by [the defendant]." <u>Id.</u> The court's decision to grant the motion to dismiss Plaintiffs' RESPA claim was therefore based on more than just the fact that the letter was addressed to a party other than the defendant contesting the claim.

Plaintiffs allege that the January 11, 2007, letter was sent by their agent (counsel Aubrey W. Fountain, III) to Countrywide's trustee, Defendant White. (Second Am. Compl. ¶ 19-20.) Plaintiffs further allege that Countrywide failed to respond in any fashion to the letter. (Second Am. Compl. ¶ 21.) While RESPA does not specify whether a letter sent to a loan servicer's trustee constitutes a "qualified written request," Countrywide's arguments, without supporting precedent, are insufficient to mandate dismissal of Plaintiffs' RESPA claim at this stage of the case where a more complete record may resolve the issue.

    **c.**     **Damages Under RESPA**

Countrywide also contends that Plaintiffs' RESPA claim should fail because "Plaintiffs cannot, as a matter of law, recover actual damages based upon the foreclosure sale to which they consented in November, 2006." (Defs.' Mot. to Dismiss Am. Compl. at 12.) In the Second Amended Complaint, Plaintiffs allege that Countrywide's RESPA violation gives rise to damages including actual damages for the loss of equity in their home resulting from the foreclosure, other actual damages (including economical damages, emotional and mental distress, frustration, humiliation, and damage to their reputation), statutory damages in the amount of $1,000.00 pursuant to 12 U.S.C. § 2605(f)(1)(B), and attorneys' fees and costs. (Second Amend. Compl. at 5-6.)

RESPA provides for relief in the form of "any actual damages" arising from a violation of the statute, as well as "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1)(A) and (B). Following this Court's prior decision dismissing Plaintiffs' Amended Complaint with respect to the United States, any actual damages claimed by Plaintiffs that are related to the foreclosure of Plaintiffs home are barred by the Rooker-Feldman doctrine where to award actual damages relative to the foreclosure would require the Court to invalidate the judgment of the state court by deeming the foreclosure unlawful. (Mar. 20, 2008 Mem. Op.) The remaining damages available to Plaintiffs, therefore, are "any actual damages" that Plaintiffs can demonstrate arose directly from Countrywide's violation of RESPA, and up to $1,000.00 in nominal damages if Plaintiffs are able to prove a "pattern or practice of noncompliance" with RESPA provisions. Costs and attorneys fees are also available to Plaintiffs if they prevail on their RESPA claim, subject to the Court's discretion. 12 U.S.C.

§ 2605(f)(3). Accordingly, Plaintiffs RESPA claim does not fail as a matter of law for any lack of Plaintiffs seeking appropriate damages.

>    **6.     Plaintiffs' FDCPA claim against Countrywide is sufficient to preclude dismissal.**

In Count Two of the Second Amended Complaint, Plaintiffs allege that Defendant Countrywide violated the FDCPA. Specifically, Plaintiffs allege that Countrywide misrepresented the character of the debt owed (Second Am. Compl. ¶ 33.) Plaintiffs further allege that Countrywide threatened to foreclose on the subject property when such action was not lawful. Id. Plaintiffs also assert that Countrywide failed to cease collection of the debt owed after written notice was provided that the debt was disputed. Id. Countrywide argues in response that Plaintiffs' claims under the FDCPA are deficient because they lack factual support and "merely parrot the language of the statute." (Defs.' Mot. to Dismiss Am. Compl. at 12.)

Contrary to Countrywide's contentions, Plaintiffs have alleged sufficient facts to support their FDCPA claim pursuant to the Rule 12(b)(6) standard. Plaintiffs support their contention that Countrywide misrepresented the character of the debt by alleging that Countrywide, through its trustee, White, provided inconsistent payoff amounts of $218,305.83 on October 17, 2006, and $212,874.37 on December 14, 2006. (Second Am. Compl. at ¶¶ 13 and 17.); see also (Pls.' Mem. in Opp'n at 3-4.) Furthermore, Plaintiffs support their contention that Countrywide threatened to foreclose on the property in question when such action was not lawful by alleging that Countrywide, through its trustee, White, initiated foreclosure proceedings on November 7, 2006. (Second Am. Compl. at ¶ 12.) Finally, Plaintiffs support their contention that Countrywide failed to cease collection of the debt owed after written notice that the debt was

17

disputed by alleging that the balance provided by Defendant White on December 15, 2006, was disputed, and that White nevertheless subsequently foreclosed on the property. (Second Am. Compl. at ¶¶ 18 and 22.) Taken as true, as the Court must, such allegations are sufficient to state the elements of Plaintiffs' FDCPA claim. Accordingly, Countrywide's motion to dismiss Plaintiffs' FDCPA claim will be DENIED.

    **7.    Plaintiffs' FDCPA claim against White is also sufficient to preclude dismissal.**

In Count Three of the Second Amended Complaint, Plaintiffs allege that Defendant White violated the FDCPA. Plaintiffs' allegations against White are substantially similar to their allegations against Countrywide. White responds to the allegations as has Countrywide, arguing that Plaintiffs' claim under the FDCPA is deficient because it fails to allege any factual support and "simply recite[s] the statutory language of the FDCPA . . . ." (White's Mot. to Dismiss Am. Compl. at 7.) For the same reasons as discussed in the analysis of the FDCPA claim against Countrywide, the allegations of the Second Amended Complaint are sufficient to state the elements of Plaintiffs' FDCPA claim against White.

    **8.    Plaintiffs' breach of fiduciary duty claim against White is *not* sufficient to preclude dismissal.**

In Count Four of the Second Amended Complaint, Plaintiffs allege that Defendant White breached his fiduciary duty to Plaintiffs. Specifically, Plaintiffs allege that White, as substitute trustee, breached his fiduciary duty by failing to "provide accurate loan reinstatement and/or payoff amounts to the Plaintiffs," "by failing or refusing to keep the Plaintiffs fully informed as to the status of the foreclosure proceedings," "by failing to communicate with them in a timely

manner regarding the foreclosure proceedings," and "by failing to provide an accurate accounting of the foreclosure sale and deliver same to the Henrico County Commissioner of Accounts pursuant to Code of Virginia §§ 55-59.4 and 26-15." (Second Am. Compl. at ¶¶ 43-47.)

White argues that Plaintiffs' claim for breach of fiduciary duties should be dismissed because "Plaintiffs fail to allege any facts which support or establish the existence of the fiduciary duties alleged in their Amended Complaint." (White's Mot. to Dismiss Am. Compl. at 8.) White contends that under Virginia law, any fiduciary duty that he owes Plaintiffs must be specifically enumerated in the deed of trust, or set forth by statute or common law, and that "Plaintiffs' allegations of the existence of various trustees' duties are conclusions of law," but that "[n]o such fiduciary duties exist either by statute or common law . . . ." Id. at 9. White otherwise contends that he met all fiduciary obligations and complied with the Henrico County Court's Order and the subsequent Consent Order authorizing the foreclosure sale. Id.

Plaintiffs are correct that a deed of trust gives rise to certain fiduciary duties. See Smith v. Credico Indus. Loan Co., 362 S.E.2d 735, 736 (Va. 1987) Under Virginia law, however, deeds of trust are treated under the same principles as contracts, and the trustee only owes those duties that are listed in the deed of trust itself. See Belvin's Ex'r v. Belvin, 189 S.E. 315, 318 (Va. 1937); see also Fleet Finance v. Burke & Herbert Bank and Trust, CHANCERY NO. 122305, 1992 WL 884461, at *3 (Va. Cir. Ct. Jan. 28, 1992). Plaintiffs' claim fails to set forth any fiduciary duties arising pursuant to the deed of trust. The Complaint does not allege that the deed of trust required White to provide accurate loan reinstatement and payoff amounts to Plaintiffs, to keep Plaintiffs fully informed as to the status of the foreclosure proceedings, or to

19

communicate with Plaintiffs in a timely manner regarding the foreclosure proceedings. Without the proscribed existence of a fiduciary duty, Plaintiffs' claim for the breach of such a duty must fail.

Plaintiffs' claim that White breached his fiduciary duty by failing to provide an accurate accounting of the foreclosure sale and deliver same to the Henrico County Commissioner of Accounts is also lacking. The Code of Virginia requires that "[w]ithin six months after the date of a sale made under any recorded deed of trust . . . the trustee shall return an account of sale to the commissioner of accounts of the court wherein the instrument was first recorded." Va. Code Ann. § 26-15. The Second Amended Complaint fails to allege any facts to support Plaintiffs' claim that White violated § 26-15. Instead, Plaintiffs provide only conclusory allegations that White violated the section. Accordingly, the allegations do not rise to the standard required to state a claim upon which relief can be granted.

### V. Conclusion

Accordingly, for the above-stated reasons, Countrywide's motions to dismiss (docket entry nos. 16, 46, & 74) will be DENIED. White's motion to dismiss (docket entry no. 60) will be GRANTED IN PART as to Plaintiffs' claim that White breached his fiduciary duty, and DENIED IN PART as to Plaintiffs' FDCPA claim against White.

An appropriate Order shall issue.

/s/
Dennis W. Dohnal
United States Magistrate Judge

Date: September 2, 2008
Richmond, Virginia