**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**DANNIE CARTER, et al,**

      Plaintiffs,

v.                                       CIVIL NO.: 3:07CV651

**COUNTRYWIDE HOME LOANS, INC.,
et al,**

      Defendants.

## PLAINTIFFS' OMNIBUS MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

COME NOW the Plaintiffs, by counsel, and for their Omnibus Memorandum in Opposition to Defendants' Motions for Summary Judgment, they state as follows:

### *OVERVIEW*

For the sake of judicial economy and to simplify the Court's consideration of the parties' Statements of Facts, Plaintiffs' file this single Omnibus opposition to the two Summary Judgment Motions filed by Defendants Countrywide Home Loans, Inc. ("Countrywide") and Samuel I. White, P.C. ("White"). This is especially appropriate in light of White's near wholesale incorporation of the Countrywide briefing as its own.

As an additional overview, Plaintiffs note that the Defendants have ignored the Court's instructions to file a Summary Judgment Motion limited to the legal question of what damages remedy is available in the law for violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2605(e) and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692, et seq. In fact, after arguing with undisclosed authority that neither statute allowed such damages as a matter of law, Defendants now betray the lack of truth in such earlier

representations and accept as a given in their Motions that a broad range of damages – those sought by the Plaintiffs in this case – are recoverable.

Accordingly, the present Motions are not, as Countrywide claims in its first footnote, "per the Court's instructions." (Countrywide Mem., p.1). The present motions are the Defendants' single shot at Summary Judgment. It would be unfair and certainly beyond the norm in this District to permit separate piece-meal Summary Judgment challenges throughout the case. Additionally, significant parts of the Plaintiffs' outstanding discovery to Defendants – none of which was substantively answered - pertain to elements of the Plaintiffs' damages, for example communications between the Defendants that would evidence the real balance owing at the time of the Plaintiffs' disputes and inquiries and other related account records. The Court had stayed further litigation in the case pending its decision as to the legal question of what damages are recoverable under the RESPA and FDCPA. It also stayed the Plaintiffs' enforcement of discovery to which no timely or proper objections had been made or could be supported. To the extent the Court is to consider the arguments in these Motions related to the economic damages of the Plaintiff, it must first provide the Plaintiffs full access to the Federal Rules of Civil Procedure by which to compel compliance with same from each Defendant. Plaintiffs make this request formally as a Rule 56(f) request, but could just as well assert same as a Discovery Sanction under Rule 37, particularly Rule 37(c)(1).

## *PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS*

For reasons unknown to Plaintiffs, Countrywide has elected to ignore Local Rule 56(B) and Defendant's obligation to provide a "Listing" of undisputed material facts in support of its Motion. Instead, it commences argument immediately under the heading "Statement of Undisputed Facts" and offers a long narrative – some parts correct and others not. Plaintiffs

cannot coherently respond in accordance with Fed. R. Civ. P. 56 or Local Rule 56 without the required "List."[1]

Many of Defendants' allegations of facts are also not germane to the issues at hand. For example, much of Countrywide's "Statement of Undisputed Facts" consists of a largely inaccurate description of the facts and law governing liability – a part of the case Defendants do not challenge in their Summery Judgment motions. In fact, Countrywide's discussion of damages does not begin until page seven of its Memorandum. Plaintiffs' do not herein respond to the liability assertions prior to that point, but do not of course acknowledge their accuracy for later in the case. Even then, Countrywide does not really suggest any facts that are controversial. Similarly, White's Memorandum does not allege any specific facts and instead references parts of the written discovery answers in the case. To the extent that Defendants were dissatisfied with Plaintiffs' Interrogatory responses, they could contact the Plaintiffs' counsel about same and commence a Meet and Confer process. They have not previously complained about the completeness of Plaintiffs' damages answers. However, in the interest of full compliance the Plaintiffs are supplementing such responses with the details described under oath in the attached Declaration.

Plaintiffs have provided a coherent and simplified Declaration that accurately describes those elements of their injuries attributable to the Defendants' failures alleged in this case. Under oath, they state as follows:

---

[1] In relevant part, "a series of names or other items written or printed together in a meaningful grouping or sequence[.]" List. Dictionary.com. Dictionary.com Unabridged (v 1.1). Random House, Inc. http://dictionary.reference.com/browse/list (accessed: March 27, 2009).

1.      Plaintiffs are residents of the Commonwealth of Virginia residing in their home at 1771 Altman Road, Henrico, Virginia. (Exhibit "A", Declaration of Dannie R. Carter and Dorothy M. Carter, ¶ 1)

2.      Plaintiffs' home was purchased in 1995 with a loan of $149,679.00 from Nationsbanc Mortgage Corporation with Seasons Mortgage as the loan servicer. (Exhibit "A", ¶¶ 2, 3)

3.      At some point in time, the servicer of the loan changed to Countrywide Home Loans, Inc. (Exhibit "A", ¶ 3)

4.      Since 1999, Countrywide has repeatedly threatened and attempted foreclosure on Plaintiffs' home based on claims that Plaintiffs were significantly behind in their payments. (Exhibit "A", ¶ 4)

5.      Since 1999, Plaintiffs have sought an understandable response to numerous contacts and requests for explanation as to how they were behind in payments and how the servicer applied payments as they were made. (Exhibit "A", ¶¶ 5, 6)

6.      Countrywide made a series of foreclosure attempts in September 2003, January, February, and May 2004, and January 2006 on Plaintiffs' home. (Exhibit "A", ¶ 7)

7.      On March 7, 2006, counsel for Plaintiffs sent a qualified written request ("QWR") to Countrywide specifically questioning the stated account balance and escrow shortage in Plaintiffs' account and asked for documentation and a transaction history to substantiate Countryside's claims of arrearages. (Exhibit "A", ¶ 9)

8.      Countrywide failed to adequately respond to Plaintiffs' QWR. (Exhibit "A", ¶ 10)

9.      Countrywide's failure to respond to Plaintiffs' QWR resulted in Plaintiffs' inability to obtain refinancing for their home and in severe physical and emotional damage to Plaintiffs, especially Plaintiff Dorothy Carter. (Exhibit "A", ¶¶ 11 – 13)

10.     On or about November, 2006, Countrywide initiated foreclosure proceedings again, scheduling a foreclosure sale on November 20, 2006. (Exhibit "A", ¶ 14)

11.     Countrywide and/or Samuel I. White, P.C., were ordered to provide Plaintiffs accurate and complete payoff and reinstatement figures for the loan, information also requested in a second QWR from Plaintiffs, by December 20, 2006, so that Plaintiffs could refinance out of the loan that was otherwise proceeding through foreclosure. (Exhibit "A", ¶¶ 15, 20)

12.     Full information as requested by Plaintiffs' QWR's was never provided.  White provided payoff and reinstatement figures on Friday, December 15, 2006, that remained substantially inaccurate and were not provided timely such as to permit refinancing. (Exhibit "A", ¶ 16)

13.     Plaintiffs continued their efforts to obtain refinancing based on insufficient and inaccurate information, and those efforts continue to the present, but Plaintiffs' efforts were unsuccessful without the cooperation of Countrywide. (Exhibit "A", ¶¶ 17 – 21)

14.     Since the finalization of foreclosure, Countrywide has made attempt to evict Plaintiffs from their home, despite Plaintiffs' filing of a lawsuit against Countrywide related to their home. (Exhibit "A", ¶ 22)

15.     Plaintiffs continue to experience medical problems, embarrassment and humiliation caused by Countrywide. (Exhibit "A", ¶¶ 23, 24, 26, 27)

16.     Plaintiffs continue to attempt to obtain financing for a new mortgage and continue to incur losses in time and money. (Exhibit "A", ¶¶ 25, 28)

## *ARGUMENT*

## I.  DEFENDANTS' CHALLENGES TO PLAINTIFFS' DAMAGE ELEMENTS ARE NOT PROPERLY SUMMARY JUDGMENT MOTIONS.

The original question posed by the Court was limited to – what types of damages are available under the RESPA and the FDCPA.   This question – ignored entirely by the Defendants – is simple and uncontroversial.  The answer is – all damages.   These statutes are just like other Federal consumer protection statutes.   Plaintiffs cite, below, the case law about which Defendants' must already know.  However, Defendants' Motions instead seem to be more like a Motion in Limine to seek exclusion of parts of the Plaintiffs' damages.  Such a use for Rule 56 is inappropriate. The Court cannot and should not consider a Summary Judgment motion challenging, bit-by-bit, individual damages elements of a consumer case that will still go to trial notwithstanding any such rulings.  The question before the Court now is not whether the Plaintiff has been damaged – there are statutory damages, attorneys' fees and certainly if nothing else the hassles, frustration, lost time and out of pocket copying and mailing costs, all of which will still be at issue even if Defendants' motions were conceded.

This is not the first time a Defendant has attempted a limited and partial attack on damage elements in a consumer case.   In fact, Plaintiffs' counsel faced a near identical challenge in a Rhode Island District Court FCRA case. Exhibit "B", Harrison v. MBNA America Bank, N.A., 03-75S (R.I. March 1, 2005) (Report and Recommendation adopted in full July 13, 2005). Defendant MBNA has a nearly identical brief to that faced in this case – the Defendant presented just such a collection of questions or assertions about a selected element of damages.   The Court explained:

> Plaintiff correctly points out that MBNA's argument is more in the nature of multiple motions in limine to exclude damages evidence than a motion for

> summary judgement as to "all or any part" of a "claim" by a "defending party."
> Fed. R. Civ. P. 56(b). Because there are genuine issues of material fact precluding
> summary judgement for MBNA on the issue of liability, MBNA is essentially
> asking this Court to exercise its discretion under Fed. R. Civ. P. 56(d) to narrow
> the range of potential damages.

Id.  The Court rejected just that attempt, stating:

> Thus, this court believes that it would be an advisory and potentially academic
> exercise to sort through the legal and factual grounds for all of Plaintiff's potential
> damages claims prior to Plaintiff establishing liability against MBNA and actually
> pursuing a claim for these damages at trial.

*Id. See also* <u>Antenor v. D&S Farms</u>, 39F. Supp. 2d 1372, 1375 (S.D. Fla. 1999) (court "may not

enter summary judgement on a portion of a claim - such as the issue of liquidated damages (a

potential remedy for one of Plaintiffs' causes of action)[.]"; <u>Kendall McGaw Labs., Inc. v.</u>

<u>Community Memorial Hosp.</u>, 125 F.R.D. 420, 422-23 (D.N.J. 1989) (court declined for reasons

of judicial efficiency to entertain motion for partial summary judgement on issue of damages in

view of unresolved liability issue).  This Court should as well.

## II.     "ACTUAL DAMAGES" ARE BROADLY PERMITTED AND DEFINED UNDER BOTH RESPA AND FDCPA.

The simplest element of RESPA damages is the mundane *inconvenience* caused by the

violation.   Actual damages under a RESPA violation will include all of the homeowner's

economic injuries that flow from the Defendant's failure to respond to the qualified written

request, make appropriate corrections to the account, or otherwise comply with the Act's

requirements.   For example, these damages may encompass:  Cost of photocopies and postage in

sending a qualified written request.  <u>Cortez v. Keystone Bank</u>, 2000 U.S. Dist. LEXIS 5705

(E.D. Pa. May 2, 2000); <u>*In re* Tomasevic</u>, 273 B.R. 682 (Bankr, M.D. Fla. 2002).  They can

include time spent in obtaining compliance, transportation cost, and inconvenience. <u>Johnstone v.</u>

<u>Bank of Am.</u>, 173 F. Supp. 2d 809 (N.D. Ill. 2001); <u>Cortez v. Keystone Bank</u>, 2000 U.S. Dis.

LEXIS 5705 (E.D. Pa. May 2, 2000) (actual damages include time spent away from job preparing correspondence to servicer); <u>Rawlings v. Dovenmuehle Mortgage, Inc</u>., 64 F. Supp. 2d 1156 (M.D. Ala. 1999) ($75 for "secretarial service correspondence" and $40 for traveling to post office.).   RESPA damages also will include additional interest, late fees, and foreclosure costs. <u>Johnstone v. Bank of Am</u>., 173 F. Supp. 2d 809 (N.D. Ill. 2001); <u>*In re* Tomasevic</u>, 273 B.R. 682 (Bankr. M.D. Fla. 2002) (additional interest caused by servicer's misapplication of chapter 13 plan payments to pre-petition arrearage recoverable as actual damages, though debtor failed to prove charges for additional interest).

Actual damages can also include the lost equity in a home after a foreclosure occurs. <u>Wagner v. EMC Mortg. Corp</u>.; 103 Cal. App. 4th 1125, 127 Cal. Rptr. 2d 685 (2002).  In fact, this is true even – as in this case – where the foreclosure itself is not challenged (or challengeable) as wrongful. *Id.* (foreclosure may be included in actual damages awarded under § 2605(f)(1), regardless of whether foreclosure was wrongful, if borrower can show that foreclosure occurred as a result of RESPA violation).  Actual damages include damage to credit rating. <u>Hutchinson v. Delaware Sav. Bank F.S.B</u>., 410 F. Supp. 2d 374 (D.N.J. 2006); <u>Williamson v. Advanta Mortg. Corp</u>., 1999 U.S. Dist. LEXIS 16374 (N.D. Ill. Oct. 8, 1999) (damages resulting from inability to refinance mortgage at lower interest rate based on servicer's failure to take corrective action and negative reporting sufficiently pleaded).

Given the frustration and anguish that homeowners often experience in attempting to resolve disputes with unresponsive servicers, most court have held that a plaintiff is entitled to recover actual damages for emotional distress.  They have done so on the same basis as under the FCRA and the FDCPA - that RESPA is a remedial consumer protection statute that should be construed liberally. <u>Wright v Litton Loan Servicing L.P.,</u> 2006 WL 891030 (E.D. Pa. Apr. 4,

2006) (concluding actual damages include non-economic losses such as suffering and emotional distress and awarding plaintiff $25,000); Ploog v. Homeside Lending, Inc., 209 F. Supp. 2d 863 (N.D. Ill. 2002); Johnstone v. Bank of Am., 173 F. Supp. 2d 809 (N.D. Ill. 2001); Rawlings v. Dovenmuehle Mortgage, Inc., 64 F. Supp. 2d 1156 (M.D. Ala. 1999); In re Thompson, 350 B.R. 842 (Bankr. E.D. Wis. 2006) (recognizing actual damages includes emotional distress but finding that plaintiff had not sufficiently demonstrated causation between servicer's failure to respond to QWR and emotional distress), *appeal allowed and case remanded*, 354 B.R. 331 (D. Mass. 2006) (Bankruptcy Code preempts RESPA's dispute resolution provisions as to disputed claim in ongoing bankruptcy proceeding).

Damages under the FDCPA are similarly expansive.  Actual damages commonly include pecuniary losses such as lost wages or the cost of obtaining an unlisted telephone number, and physical injuries such as heart attacks, ulcers, vomiting, and insomnia.  In addition, the courts commonly allow recovery of damages for emotional distress. *See* FTC Official Staff Commentary § 813, 2. Courts have generally agreed that emotional distress damages can be awarded in FDCPA cases without having to meet state law requirements for tort claims such as negligence or intentional infliction of emotional distress. Panahiasl v. Gurney, 2007 WL 738642 (N.D. Cal. Mar. 8, 2007); Wenrich v. Robert E. Cole, P.C., 2000 U.S. Dist. LEXIS 18687 (E.D. Pa. Dec. 22, 2000); Lee v. CBC Co., 1996 U.S. Dist. LEXIS 21993 (S.D. Ohio Sept. 26, 1996); Grassley v. Debt Collectors, Inc., 1992 U.S. Dist. LEXIS 22782 (D. Or. Dec. 14, 1992); Smith v. Law Office of Mitchell N. Kay, 124 B.R. 182 (D. Del. 1991); In re Maxwell, 281 B.R. 101 (Bankr. D. Mass. 2002); In re Hart, 246 B.R. 709 (Bankr. D. Mass. 2000); Vidrine v. American Prof'l Credit, Inc., 477 S.E.2d 602 (Ga. Ct. App. 1996).

### III.    A REASONABLE JURY COULD FIND THAT THE PLAINTIFFS SUFFERED SOME ELEMENT OR THRESHOLD OF ACTUAL DAMAGES.

Despite Defendants' attempts to target or attack specific sources or elements of the Plaintiffs' damages, as established above, the Motions for Summary Judgment should be denied if there is any recoverable measure of actual damages.   And while a reasonable jury could certainly find that the Plaintiffs have suffered very significant damages, this Court not need go so far.  It merely has to determine if there are any actual damages at all.

Stepping back for a moment from the Defendants' specific arguments, the Court can retreat to a source entirely ignored by the Defendants – common sense.   At a minimum, the Court knows – without dispute by these Motions:

- Mr. and Mrs. Carter have long contested the account balance and history asserted by the Defendants;

- The balances and payoffs asserted by Defendants were grossly inaccurate;

- Mr. and Mrs. Carter have sent directly and through counsel multiple requests for correction and information about the correct balance owing and payoff;

- Defendants did not substantively respond to any of these;

- At the end of the day, the Carters have lost their home through White and Countrywide.

Now, Defendants can and at trial will challenge these liability assertions.  But for these setoff Motions – limited by Defendants' choice to actual damages – how can they reasonably contend that the Carters would not have suffered any actual damages from these events?   In this context, the substantial facts established in the Carters' Declaration answers beyond even Common

Sense.  The Plaintiffs have suffered significant and serious injury.  Their actual damages have endured well past the dates of their written disputes and inquiries.[2]

Defendants object to the Court's consideration of the lost equity in their home.  The basis is that the Court earlier removed from consideration any challenges to the legality of the foreclosure as a cause of damages.   This conclusion – whether Plaintiffs agreed or not – was not necessarily incorrect.   The state Court action regarded only the process of the foreclosure.  That Court permitted the foreclosure to occur.   Nothing more.  Whether or not the State Court ruled correctly is not and has never been before this Court.  Plaintiffs have not asserted same and do not now do so.   The damages alleged herein are not caused by the foreclosure.  They are caused by the impairment of the Plaintiffs' ability to re-finance and payoff the subject mortgage.  Defendants do not challenge any of the facts long asserted by the Plaintiffs in this regard and now established under oath in their Declaration.

As considered above, the Defendants assertion that physical injury is an element of emotional distress damages in inapplicable to federal claims under the RESPA and the FDCPA.  Regardless, the Carters have detailed more than adequately the manifestation of their injuries caused in at least significant part by Defendants' misconduct.

## *CONCLUSION*

Accordingly and for the reasons stated herein, the Court should deny Defendants' Motions for Summary Judgment.

---

[2] Plaintiffs do not now formally repeat the specific damage evidence detailed in their Declaration and instead for brevity and with precious knowledge of the Court's own thoroughness, they rely on the detailed statement *supra*.

RESPECTFULLY SUBMITTED,


DANNIE R. CARTER AND
DOROTHY M. CARTER

_____/s/_____
Leonard A. Bennett, Esquire
Virginia State Bar #37523
Attorney for Plaintiffs
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of March, 2009,  I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Ronald J. Guillot, Jr.
Michael Todd Freeman
Jason Hamlin
Samuel I. White, P.C.
5040 Corporate Woods Drive, Suite 120
Virginia Beach, VA 23462
(757) 490-9284
(757) 497-2802 fax


Reginald M. Skinner, Esquire
Harry M. Johnson, III, Esquire
Hunton & Williams, LLP
951 Byrd Street
Riverfront Plaza – East Tower
Richmond, VA 23219
rskinner@huton.com
pjohnson@huton.com


_____/s/_____
Leonard A. Bennett, Esq., VSB #37523
Robin A. Abbott, Esq., VSB #46596
Gary L. Abbott, Esq., VSB #68829
Attorneys for Plaintiffs
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@clalegal.com
rabbottlaw@msn.com
garyabbott9@msn.com