**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

**DANNIE R. CARTER, <u>et</u> <u>al.</u>,**

    **Plaintiffs,**

    **v.**

**COUNTRYWIDE HOME**
**LOANS, INC., <u>et</u> <u>al.</u>,**

    **Defendants.**
_____

)
)
)
)
)
)
)
)
)
)
)
)
)

    **CIVIL NO. 3:07CV651**

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on several motions filed on behalf of the Plaintiffs and the

Defendant Countrywide Home Loans, Inc. ("Countrywide"),[1] namely: (1) Countrywide's Motion

for Summary Judgment (Docket No. 123); (2) Plaintiffs' Motion to Strike Second Motion for

Summary Judgment (Docket No. 126;) and (3) Plaintiffs' Motions to Compel and Motion to

Strike Defendant Countrywide's Answer and for Other Sanctions (Docket Nos. 94, 95, 100,

129).  For the reasons set forth herein, Plaintiff's Motion to Strike Second Motion for Summary

Judgment is DENIED; Countrywide's Motion for Summary Judgment is GRANTED IN PART

and DENIED IN PART; and Plaintiff's Motions to Compel and Motion to Strike Defendant

Countrywide's Answer and for Other Sanctions are DENIED.

## I.  FACTUAL BACKGROUND

The Plaintiffs, Dannie and Dorothy Carter ("Plaintiffs" or the "Carters"), owned certain

real estate and a residence located at 1771 Altman Road, Richmond, Virginia (the "property").

---

[1]  There are no pending motions involving the Defendant Samuel I. White, P.C.

(Original Compl. ¶ 1.)[2]  The case involves a dispute concerning the mortgage indebtedness of the Plaintiffs whereby they are alleged to have become delinquent in their mortgage payments that resulted in foreclosure proceedings being initiated by Countrywide.  (Compl. ¶ ¶ 5, 12.)[3]

The Plaintiffs filed the original action in state court alleging that Countrywide had not properly credited their payments toward their mortgage indebtedness.  In that action, they sought injunctive relief against both Countrywide and White (who had been appointed as Substitute Trustee to pursue the foreclosure proceedings) to suspend the foreclosure proceedings (and to prevent any other "disposal" of the subject property), with legal title and possession to be reinvested in them.  (Original Compl. ¶ 55.)  On November 30, 2006, the state court ordered that the foreclosure sale could proceed, but Plaintiffs could redeem the property within thirty days by tendering sufficient funds to White.  See Order of Nov. 30, 2006, Carter v. White, No. CL06-2932 (Va. Cir. Ct.).  The court's order provided that if Plaintiffs were able to tender the funds within the prescribed period, then the foreclosure sale would be deemed void.  Order of Nov. 30, 2006, Carter v. White, No. CL06-2932 (Va. Cir. Ct.).  However, Plaintiffs failed to satisfy the indebtedness by the deadline and, as a result, the foreclosure sale was upheld. (Compl.  22.)  The United States, by its agency, the Department of Housing and Urban Development ("HUD"), thereafter obtained title to the property by its purchase of the property that is secured by a deed of trust maintained by the Department of Veterans Affairs (the "VA"), an agency of the United States.  (Original Compl. ¶ ¶ 33, 47.)

---

[2]  The original complaint in the matter was filed in the Circuit Court for the County of Henrico, Virginia on September 18, 2007, and subsequently removed to this Court on October 22, 2007.  (Docket No. 1, Ex. 1.)

[3] All citations to the Complaint refer to Plaintiffs' Second Amended Complaint, filed in this Court on October 2, 2008, unless otherwise noted.

2

## II.  PROCEDURAL HISTORY

As previously noted, the action that the Plaintiff initiated in state court related to Countrywide's alleged failure to properly credit payments that Plaintiffs had made towards their mortgage loan which was being serviced by Countrywide.  In this case (that was removed from the state court), Plaintiffs seek actual and statutory damages for violations of the Real Estate Settlement Procedures Act (the "RESPA"), 12 U.S.C. § 2601 et seq., and the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 et seq., and for attorneys' fees and costs for their claims that include, for example, allegations that the Defendants failed to abide by such statutory requirements as properly responding to Plaintiffs' written inquiries regarding their alleged indebtedness, and contacting them directly after having been advised that they were represented by counsel.  (Compl. at 5-6).  At the request of this Court, the Defendants moved for partial summary judgment on the discreet issue of whether the RESPA and the FDCPA provided for the recovery of actual damages as the Court thereafter held to be recoverable, subject to the establishment of a proper foundation.  (Docket Nos. 105, 108, 118.)  The Court also granted dispositive relief as to the United States that had been joined as a party defendant on behalf of HUD. (Docket No. 65.)

On September 12, 2008, this Court issued a Scheduling and Pretrial Order which superseded all prior Scheduling and Pretrial Orders.  (Docket No. 78.)  In its Order, the Court stated that:  "[a]ll dispositive motions shall be filed not later than twenty (20) days prior to the Final Pretrial Conference.  Counsel are reminded of the requirements of Local Rule 56(B) which is specifically incorporated [herein] regarding motions for summary judgment."  (Docket No. 78.)  While the Order scheduled trial proceedings to commence January 28, 2009, and the trial was subsequently rescheduled (Docket No. 93), the requirement that dispositive motions were

3

due twenty (20) days prior to the Final Pretrial Conference remained in effect, regardless of when the Conference was to be held.

Countrywide filed its Motion for Summary Judgment ("Def.'s Mot.") and supporting memorandum on July 17, 2009, in which it seeks to dismiss all of Plaintiffs' claims, precisely twenty (20) days before the scheduled Final Pretrial Conference that was scheduled to be held on August 6, 2009.  (Docket No.'s 123 & 124, respectively.)  On July 24, 2009, Plaintiffs filed their Motion and supporting Memorandum to Strike Countrywide's Motion for Summary Judgment on the grounds that Countrywide's motion was:  (1) untimely; and (2) duplicative of the initial motion that had been submitted at the direction of the Court.  (Docket No.'s 126 & 127.) Thereafter, Plaintiffs filed their opposition to Countrywide's Motion for Summary Judgment. (Docket No. 136.)  In addition, Plaintiffs filed a Motion to Strike Defendant Countrywide's Answer and for other Sanctions that is consistent with Plaintiffs' earlier discovery complaints that were addressed in their motion(s) to compel (Docket Nos. 94, 100) that had been taken under advisement by the Court.  (Docket No. 119.)

### III.  ANALYSIS

**A.     Plaintiffs' Motion to Strike Second Motion for Summary Judgment**

Plaintiffs assert in their Motion to Strike Defendant Countrywide's Motion for Summary Judgment that Countrywide's dispositive motion is procedurally and substantively barred from the Court's review and should be stricken.  Specifically, Plaintiffs assert that Countrywide's motion for summary judgment was untimely filed and that it is duplicative in nature, and thus should not be considered by the Court, at least without prior leave of court. (Pls.' Mem. in Supp. Mot. to Strike at 1-3.)

A review of this Court's September 12, 2008 Scheduling Order (Docket No. 78) demonstrates that Countrywide's motion for summary judgment was, in fact, timely filed, albeit, at "the final bell.".  The Scheduling Order requires that all dispositive motions be filed within twenty days of the final pretrial conference.  Here, the final pretrial conference was scheduled for August 6, 2009 and Defendant filed his summary judgment motion on July 17, 2009, exactly twenty days before the conference.  At the motions hearing, Plaintiff counsel conceded that the filing was within the scheduled period, and withdrew their timeliness argument.

Plaintiffs' additional argument is that Defendant's Second Motion for Summary Judgment should not be considered as Countrywide failed to seek prior leave of Court to file an additional motion for dispositive relief pursuant to Local Rule 56(c).  Specifically, Plaintiff asserts that while Countrywide had been directed by the Court in its first motion for summary judgment to only address the issue of whether actual damages were available pursuant to RESPA and the FDCPA,  Countrywide also asserted that there was no factual basis for a jury award for actual damages in any event.  Plaintiff argues that as Countrywide had raised these substantive issues in their earlier motion for summary judgment, it cannot renew such arguments now.

Although it is noted that Countrywide's first motion for summary judgment included additional argument(s) than what had been requested by the Court, its motion only addressed issues pertaining to an award of actual damages.  (See Def.'s Mem. in Supp. First Mot. Summ. J.)  In any event, where the information and argument included in the first motion for summary judgment was specifically requested by the Court, and where the Court confirmed with counsel at the time that the initial, restricted motion would not preclude any additional dispositive motions on other substantive issues, the Plaintiff's objections are insufficient and Plaintiff's Motion to Strike shall be denied.

5

**B.** **Defendant Countrywide's Second Motion for Summary Judgment**

a.    Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. Id. at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48 (emphasis in original). Indeed, summary judgment must be granted if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the non-moving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of

6

evidence," or the appearance of some "metaphysical doubt" concerning a material fact. Lewis v. City of Va. Beach Sheriff's Office, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted).

Furthermore, a "material fact" is a fact that might affect the outcome of a party's case. Anderson, 477 U.S. at 247-48; JKC Holding Co. LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact only arises when the evidence, when viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. Anderson, 477 U.S. at 248. Of course, a court cannot weigh the evidence, or make credibility determinations in its summary judgment analysis. Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

      b.     Plaintiff's Claims Under RESPA

RESPA was enacted as a consumer protection statute that sets forth standards and policies to instigate reform of the "real estate settlement process" to protect consumers "from unnecessarily high settlement charges caused by certain abusive practices that ha[d] developed in some areas of the country." 12 U.S.C. § 2601(a); see also Boulware v. Crossland Mortgage Corp., 291 F.3d 261, 265, 267 (4th Cir. 2002). Plaintiffs' have alleged several violations of RESPA by Defendant Countrywide pertaining to two qualified written requests that they allegedly sent to Countrywide, as well as violations of certain portions of RESPA governing disclosure of information to credit reporting agencies. Specifically, Plaintiffs allege RESPA violations for: (1) Countrywide's alleged failure to acknowledge receipt of, and respond to, two

7

qualified written requests, dated March 2006 and January 2007, respectively; (2) Countrywide's

alleged failure to make appropriate corrections to Plaintiffs' account; (3) Countrywide's alleged

failure to provide Plaintiffs with a written explanation of why it believed Plaintiffs' account to be

accurate, as well as contact information for a representative at Countrywide who could assist

Plaintiffs with any inquiries; (4) Countrywide's alleged failure to provide Plaintiffs with a

written explanation of why it could not obtain the relevant information requested by Plaintiffs, as

well as contact information for a Countrywide employee who could assist them; and (5)

Countrywide's alleged reporting of derogatory information regarding Plaintiffs to national credit

bureaus during Countrywide's investigation into Plaintiffs' qualified written requests.  (Compl. ¶

¶ 29a - 29e.)

> RESPA provides, in relevant part, that:

>> [i]f any servicer of a federally related mortgage loan receives a qualified written
>> request from a borrower (or an agent of the borrower) for information relating to
>> the servicing of such loan, the servicer shall provide a written response
>> acknowledging receipt of the correspondence within 20 days (excluding legal
>> public holidays, Saturdays, and Sundays) unless the action requested is taken
>> within such period.

12 U.S.C. § 2605(e)(1)(A).  Further, upon receiving a qualified written request, the statute

directs a loan servicer, within sixty days, to either make corrections to the borrower's account, or

to conduct an investigation of the borrower's account related to the borrower's inquiry.12 U.S.C.

§ 2605(e)(2)(A)-(C).  The investigation must result in either a report to the borrower which

includes a statement of the reasons for which the servicer believes the account of the borrower is

correct, the production of information requested by the borrower, or an explanation of why the

information requested is unavailable.  Id.  Additionally, the loan servicer must provide contact

8

information "of an individual employed by, or the officer or department of, the servicer who can provide assistance to the borrower."  12 U.S.C. § 2605(e)(2)(B)(ii).

A qualified written request is defined under RESPA as:

> a written correspondence . . . that . . . (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  Plaintiffs allege that they sent two qualified written requests to Countrywide, and that Countrywide failed to properly respond to either under the Act. Furthermore, Plaintiffs assert that Countrywide reported negative activity to credit reporting agencies during the investigation of Plaintiffs' qualified written requests in violation of 12 U.S.C. § 2605(e)(3).  Countrywide now seeks summary judgment on all of Plaintiffs' RESPA claims.  As each claim has a separate analysis, they will be addressed individually.

*1. Qualified Written Request - March 7, 2006*

In its motion for summary judgment, Countrywide does not appear to contest that the correspondence from Plaintiff's then-attorney, Mr. Zwerdling, is indeed a qualified written request.  Instead, their asserted basis for dispositive relief is that their replies to the March 2006 qualified written request contained all of the requested information, and otherwise was a proper response under RESPA.  (Def.'s Mem. in Supp. Mot. Summ. J. at 8-9.)

In relevant part, the March 2006 qualified written request from Mr. Zwerdling stated:

> Please be advised that our firm has been retained to investigate into the escrow shortage claimed to be owed to you by our client, Dorothy M. Carter.  In order to properly represent our client, it will be necessary that we obtain from you documentation to indicate what caused this escrow account to have a shortage of $10,179.78, including, but not limited to, transaction histories for the years 2001 through 2004 and escrow account review statements for the same period.

(Def.'s Mot. Summ. J. Ex. E.)  On March 17, 2006, and again on March 31, 2006, Countrywide

sent notices to Ms. Carter, as well as Mr. Zwerdling, informing them that the request had been

received and was being investigated in compliance with 12 U.S.C. § 2605(e)(1)(A)'s

requirement of acknowledgment of the qualified written request within the requisite time period.

(Def.'s Mot. Summ. J. Exs. F & G.)  Thus, the only remaining issue as to the particular claim is

whether the substantive response to Plaintiff's request (sent by Countrywide on May 23, 2006)

was proper pursuant to RESPA.

Section 2605(e)(2) outlines three separate ways that a loan servicer may properly respond

to a qualified written request.  First, the loan servicer has to the option of making corrections to

the borrower's account, and informing the borrower of the corrections in writing while also

including the contact information of a representative who could provide further assistance.  12

U.S.C. § 2605(e)(2)(A).  The servicer's second option is to investigate the request and provide

the borrower with a written explanation that includes the reasons the servicer believes that the

account is correct, combined with the contact information of a representative who could provide

further assistance.  12 U.S.C. § 2605(e)(2)(B).  Lastly, the servicer may investigate the matter

and provide written response to the borrower as to the reasons the servicer cannot obtain the

information the borrower requested if indeed such information could not be obtained.   12 U.S.C.

§ 2605(e)(2)(C).

In reviewing Countrywide's response to Plaintiffs' March 2006 letter, it is clear that all

of the information requested by Plaintiffs' representative was included, as well as appropriate

contact information of a Countrywide representative whom Plaintiffs could contact if they had

any additional questions.  Specifically, Plaintiff's representative requested Plaintiffs' transaction

histories for the years 2001 through 2004, and escrow account review statements for the same

10

period.  (Def.'s Mot. Summ. J. Ex. E.)  In its May 23, 2006 reply letter, Countrywide included

Plaintiffs' Loan Transaction Statement that "covered" the period of January 2001 through May

2006, and it also included a chart showing the two escrow analyses that had been conducted in

June 2003 and January 2006.  (Def.'s Mot. Summ. J. Ex. H.)  Countrywide also provided contact

information of the representative who had responded to Plaintiffs' request, including her

business e-mail address, as well as a telephone number where she could be reached.  The reply

therefore included all of the information requested by Plaintiff, as well as the statutorily required

contact information in full compliance with RESPA.

Plaintiffs assert that in addition to providing the information requested, Defendant had an

affirmative duty to investigate and ensure the accuracy of the subject accounts, even in the

absence of a specific request to do so.  (Pls.' Mem. Opp. Mot. Summ. J. at 8-11.)  Plaintiffs

argue that the use of the word "investigate" in 12 U.S.C. § 2605(e)(2)(B) and (C) requires an

affirmative investigation, even when the request is simply for documents.  (Pl.'s Mem. Opp.

Mot. Summ. J. at 9-10.)  Plaintiff explains that an affirmative investigation is required because it

ensures that the information being provided by the loan servicer is accurate, consistent with the

intent of RESPA. (Pl.'s Mem. Opp. Mot. Summ. J. at 9-10.)

Although RESPA provides that an investigation is necessary to properly respond to a

qualified written request, Plaintiff's interpretation of the statute is broader then the statute

allows, and places affirmative duties on loan servicers which are not clearly intended.  The use

of the word "investigate" presumably and logically indicates that the loan servicer must

investigate the request, and respond fully to the requests of the borrower or their representative.

However, at the same time, when the borrower's request is for specific information, and not for

an "investigation" to be conducted, providing the requested information is sufficient to fulfill the

11

RESPA obligations.  Otherwise to require a loan servicer to always conduct an essentially "blind" investigation of each account that it receives qualified written requests for, even when those requests only seek specific information, would be unduly burdensome, if not unnecessary and/or counter-productive. Such is especially so where the borrower is represented by counsel who is presumably knowledgeable in knowing what to request.

Furthermore, Plaintiffs assert that there was no statement of reasons included with Countrywide's reply letter that would have indicated that even a minimal investigation had been undertaken.  (Pl.'s Mem. Opp. Mot. Summ. J. at 10.)  Such an argument fails, as Countrywide listed each of the transactions as part of Plaintiff's Loan Transaction Statement, indicating when payments had been received, or made from the escrow account.  Furthermore, Countrywide provided the Carters' counsel with the contact information of the Countrywide representative who had responded to their request, and there is no indication that the Carters, or anyone on their behalf, ever contacted her for further explanation or information regarding Countrywide's reply letter.  Countrywide responded appropriately to the Carters' March 2006 qualified written request, and therefore its Motion for Summary Judgment as to the March 2006 qualified written request will be GRANTED.

> 2.       *Qualified Written Request - January 11, 2007*

A servicer's duties pursuant to RESPA are required when the servicer "receives a qualified written request from the borrower."  12 U.S.C. § 2605(e)(1)(A).  However, the borrower must demonstrate that they mailed the qualified written request to the proper address, such that the servicer's duties to respond were "triggered" under the statute.  See McLean v. GMAC Mortgage Corp., Inc., Case No. 06-22795-CIV, 2008 WL 5246149, at *3 (S.D. Fla. Dec. 16, 2008).  Defendant Countrywide asserts in its motion for summary judgment that the letter

12

from Plaintiff's counsel, dated January 11, 2007, was not a qualified written request under the statute as it was not sent nor addressed to it; and, furthermore, if it did qualify as such under the Act, the letter was not properly "received" such that it did not require any response from Countrywide.  (Def.'s Mem. in Supp. Mot. Summ. J. at 9-10.)

A review of the supposed qualified written request demonstrates that RESPA duties were not implicated as the letter was not received by Countrywide, nor was it received by an agent authorized to receive its qualified written requests.  The letter was written on behalf of the Plaintiffs by an attorney.  (Def.'s Mot. Summ. J. Ex. J.)  The letter is addressed to Co-Defendant Samuel I. White, P.C., and is directed to a specific individual, a Mr. Eric White, in that office.  (Def.'s Mot. Summ. J. Ex. J.)  The content of the letter requests specific information and assistance from Mr. White, and does not appear to request information from, or address questions to, Defendant Countrywide.  Furthermore, it is clear from the text of the letter, that Plaintiff's representative did not believe that he was making a request of Countrywide, as he states at the end of the letter:  "please do not hesitate to forward to me the appropriate contact person with Countrywide whom I can make this appeal on behalf of the Carters."  (Def.'s Mot. Summ. J. Ex. J.)  There is no evidence that any person at Countrywide ever received the letter, nor that Samuel I. White, P.C. acknowledged the letter as a qualified written request that required a response on behalf of Countrywide.  (Def.'s Mot. Summ. J. Ex. K, Voces Decl. ¶¶ 9-10.)[4]

---

[4]  The Court notes that in its September 3, 2008 Memorandum Opinion regarding Defendant Countrywide's Motion to Dismiss, the Court held that at the Rule 12(b)(6) stage the record was incomplete to determine whether the January 2007 letter was, indeed, a qualified written request.  (Mem. Op. at 14-15.)  At this stage of the litigation, however, the record has been sufficiently developed such that Defendant's argument that the January 11, 2007 letter was not received by Defendant Countrywide has merit, and thus, dispositive relief is proper at this

Additionally, Plaintiffs assert that although Plaintiffs' letter was not addressed to Countrywide, it was nevertheless received by an agent of Countrywide (White), such that Countrywide's duties pursuant to RESPA were implicated. (Pl.'s Mem. in Opp. Mot. Summ. J. at 13-14.) Specifically, Plaintiff asserts that it was unclear where qualified written requests were to be sent, and that it was reasonable for Plaintiffs to assume that all correspondence regarding the foreclosure be sent to Samuel I. White, P.C. as agent for Countrywide. (Pl.'s Mem. in Opp. Mot. Summ. J. at 14.) Although relevant case law is limited as to the issue of whether an agent may properly "receive" a qualified written request pursuant to 12 U.S.C. § 2605(e)(1)(A), it appears clear, based on a plain reading of the statute, that if a servicer is permitted to assign agents for receipt of qualified written requests, the agent would have to be specifically designated for such a purpose in order for the servicer's duties to be implicated under the statute. For example, the statute places strict time limits on when a servicer must respond to a borrower's inquiry, and if the servicer were to designate "receipt" of qualified written requests by an agent, the servicer would necessarily have to implement certain policies or procedures to ensure that the agent properly responded to the request or informed the servicer of the "receipt" in a timely fashion. Thus, even if Plaintiffs January 11, 2007 letter was intended for Countrywide, Plaintiff has failed to offer any evidence that the letter was actually received by Countrywide, or a properly designated agent. Therefore, Defendant's motion for summary judgment as to the January 11, 2007 communication will be GRANTED.

---

stage.

3.    *Alleged Violations of RESPA Regarding Improper Credit Reporting*

Defendant Countrywide additionally requests dispositive relief as to Plaintiff's claims of improper credit reporting in violation of RESPA.  (Def.'s Mem. in Supp. Mot. Summ. J. at 11.) Specifically, Defendant states that Plaintiff has failed to present any evidence demonstrating that Countrywide published any false credit information during the investigation period of the alleged qualified written requests, as prohibited by RESPA.  (Def.'s Mem. in Supp. Mot. Summ. J. at 11.)  In response, Plaintiffs assert that Defendant Countrywide failed to produce the evidence requested by Plaintiffs during discovery regarding their credit reporting practices; and thus, the Court should , at a minimum, adopt an inference that if Countrywide had produced the requested evidence, it would have been unfavorable to the Defendant's position.  (Pl.'s Mem. in Opp. Mot. Summ. J. at 15-16.)

As Countrywide notes, there has been no evidence presented by the Plaintiffs regarding Countrywide's alleged improper credit reporting in violation of RESPA.  In support of their assertion that these violations are without merit, Countrywide has presented the Declaration of Ms. Lori Ruiz, a Countrywide Case Management Litigation Liaison, who affirms that she had researched the Plaintiffs' account, and could not find any derogatory credit reporting for the relevant time period.  (Def.'s Mot. Summ. J. Ex. at 2.)  Indeed, while Plaintiffs assert that their inability to present evidence as to their claim at this stage in the litigation is the result of Defendant's failure to comply with discovery demands, Defendant has certified to the Court that it has complied with the Court's May 5, 2009 discovery Order, and, as discussed below, Plaintiff has failed to timely seek relief from the Court for such alleged discovery abuses.  Accordingly, Plaintiffs are unable to present any evidence in support of this allegation to effectively respond to Countrywide's position, and, therefore, dispositive relief as to the claim will be GRANTED.

#### 4.     Qualification of Mr. Dannie Carter as "borrower" under RESPA

Defendants have also asserted that summary judgment should be granted as to Plaintiff

Dannie R. Carter "standing" as he is not a "borrower" as defined by RESPA, and, therefore, he is

not entitled to relief pursuant to the Act.  As summary judgment will be granted as to all of the

RESPA claims, the essentially procedural argument is rendered moot.

c.     Plaintiff's Claims Under the FDCPA

#### 1.     Countrywide as a "debt collector" pursuant to the FDCPA

Countrywide additionally seeks dispositive relief for Plaintiffs' FDCPA claims, asserting

that Countrywide is not a "debt collector" as defined by the Act; and additionally, that Plaintiffs

have not properly alleged that Countrywide is a "debt collector" for liability purposes pursuant

to the Act.  (Def.'s Mem. Supp. Mot. Summ. J. at 12-14.)  Plaintiffs assert in response that

Countrywide's interpretation of a "debt collector" is invalid, based upon a formula that is

incongruent with relevant case law.  (Pl.'s Mem. Opp. Mot. Summ. J. at 16-19.)

In relevant part, the FDCPA defines "debt collector" as any person whose "principle

purpose . . . is the collection of any debts," or one "who regularly collects or attempts to collect,

directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. §

1692a(6).  The parties agree that Defendant Countrywide's principle purpose is not the

collection of debt; therefore, in order to be liable under the FDCPA, Countrywide must be found

to "regularly collect debts" as part of its business.  See 15 U.S.C. § 1692a(6).  Countrywide

asserts that they are not a debt collector because the debt collection activity engaged in by the

company is minimal in comparison to its overall business activity.  Utilizing several cases from

other circuits, Countrywide asserts that the Court should focus on the percentage, or volume of

business activity attributed to debt collection, in determining whether Countrywide regularly

16

engages in such activity.  (Def.'s Mem. in Supp. Mot. Summ. J. at 12) (citing <u>Nancy v. Petty,</u>

<u>Livingston</u>, <u>Dawson & Devening</u>, 881 F. Supp. 223 (W.D. Va. 1994); <u>Hartl v. Presby & Assocs.</u>,

No. 95-C-4728, 1996 WL 529339 (N.D. Ill. Sept. 16, 1996); <u>Alexander v. Omega Mgm't, Inc.</u>,

67 F. Supp. 2d 1052, 1055 (D. Minn. 1999.)  Countrywide assets that by utilizing a volume

analysis, Countrywide is not a debt collector, as acquisition of loans that were in default at the

time of acquisition have been less than 1% of Countrywide's total acquisitions over time, and the

acquisition and servicing of such loans has averaged only 0.21% of Countrywide's total

business. (Def.'s Mem. in Supp. Mot. Summ. J. at 13.)  Accordingly, Countrywide asserts that

they do not regularly collect debts under the Act, and are not, therefore, subject to its dictates.

Countrywide's assertion that a volume-based analysis should be considered by the Court

fails to take into account the breadth of Countrywide's debt collection activities.  The cases cited

by Countrywide analyze whether debts have been "regularly collected" by much smaller entities,

such as law firms, or property management companies.  In each of those cases, the overall

collection activity of the entity was relatively minor in comparison to a company such as

Countrywide, and the subject activity only involved a relatively small number of consumers

affected by the activity.  Utilizing such an analysis in regard to Countrywide's collection

activities fails to take into account that, while a small percentage of Countrywide's overall

business involves debt collection, there are still a significant portion of the population who are

impacted by Countrywide's debt collection efforts.  As noted by the Third Circuit in <u>Oppong v.</u>

<u>First Union Mortgage Corp.</u>, in holding that Wells Fargo Home Mortgage, Inc. was a debt

collector pursuant to the FDCPA:  "disparity in size, by itself, is not dispositive of whether [an

entity] "regularly" collects debts."  <u>See</u> 215 F. App'x 114, 119-20 (3d Cir. 2007) (citing

<u>Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti</u>, 374 F.3d 56, 63 (2d Cir.

17

2004)).  The same rationale has been adopted by several other courts, as it has become clear that:

"'if the volume of a person's debt collection services is great enough, it is irrelevant that these

services only amount to small fraction of [the entity's] total business activity.'" Id. at 119

(quoting Garrett v. Derbes, 110 F.3d 317, 318 (5th Cir. 1997)).  Thus, although Defendant

Countrywide asserts that only 0.21% of its total business is dedicated to the acquisition and

servicing of loans in default at the time of acquisition, the dollar value associated with that

portion of its business is, nevertheless, $2,404,958,058, a rather significant amount.  (Def.'s Mot.

Summ. J., Ex. N.)  It is also readily apparent that the acquisition and servicing of Countrywide

efforts constitute a regular debt collection practice, supported by significant resources and

funding.  Oppong, 215 F. App'x at 119.  Therefore, although not proportionally significant in

Countrywide's overall business activities, its debt collection activities are such that they

constitute "regular debt collection," as defined by the Act, making Countrywide a "debt

collector" for purposes of FDCPA liability.

     In the alternative, Countrywide asserts that even if they are a debt collector pursuant to

the Act, Plaintiff's have failed to allege in their amended complaint that Countrywide is a "debt

collector," and as such, summary judgment should be granted.  Specifically, under 15 U.S.C. §

1692a(6)(F), the FDCPA only applies to a mortgage loan servicer that was servicing a debt

already in default at the time the loan was obtained by the servicer.  Countrywide asserts that

Plaintiff's failure to allege such an essential element of their FDCPA claims requires summary

judgment relief.

     Plaintiffs' Second Amended Complaint alleges that "Countrywide began servicing the

debt for another after it contends the loan was in default."  (Compl. ¶ 8.)  Although not explicit,

such language allows for the reasonable inference that the Plaintiffs are alleging that

Countrywide is a debt collector pursuant to the statute, and as the parties dispute whether the loan was in default at the time of Countrywide's acquisition of it (as confirmed in oral argument), there is a material factual dispute as to the issue that must be resolved at trial.[5] Therefore, Defendant Countrywide's motion for summary judgment as to the substantive elements of Plaintiffs' FDCPA claims will be DENIED.

> **2.** *Qualification of Mr. Dannie Carter as a "consumer" under FDCPA*

Defendant further asserts that dispositive relief should be granted as to Plaintiff Dannie R. Carter's FDCPA claims because he does not qualify as a "consumer" pursuant to the Act. (Def.'s Mem. Supp. Mot. Summ. J. at 14.)  Specifically, Countrywide argues that, based on the plain language of the Act, Mr. Carter is precluded from recovery as he did not sign the Deed of Trust Note, or the related loan modification agreement. (Def.'s Mem. Supp. Mot. Summ. J. at 14.)[6]

The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).  However, in certain subsections of the statute, the definition of "consumer" is broadened to include one's spouse or other person(s) subject to the debt collector's impermissible conduct.  For example, in 15 U.S.C. § 1692c, which governs

---

[5] The Court would most probably allow for a minor amendment of the Amended Complaint to address the issue in any event.

[6] Plaintiffs assert that Countrywide may not now dispute Mr. Dannie Carter's standing as a Plaintiff in this case because Countrywide never disclosed the defense in response to Plaintiffs' contention interrogatories.  By challenging Mr. Carter's standing as a proper plaintiff, Countrywide has called into question the subject matter jurisdiction that this court may assert over Mr. Carter.  Such a challenge is acceptable at the summary judgment stage of the case and was not waived because Countrywide did not assert the defense at an earlier stage.  See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")

communication in connection with debt collection, the definition of "consumer" is expanded to

include "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or

administrator."  15 U.S.C. § 1692c(d).  As the statute selectively broadens the definition of

consumer in certain sections, the principles of statutory interpretation require that the narrower

definition, excluding the consumer's spouse, be applied in those sections in which the definition

of "consumer" is not expanded.  See Brown v. Gardner, 515 U.S. 115, 120 (1994) (quoting

Russello v. United States, 464 U.S. 16, 23 (1983)) ("Where Congress includes particular

language in one section of a statute, but omits it in another section of the same Act, it is

generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

exclusion.")  It is clear that Mr. Carter is not a "consumer" as defined under all sections of the

FDCPA, as he is not obligated or even allegedly obligated to pay any debt to defendant

Countrywide, as he did not sign the Deed of Trust Note, or the related loan modification

agreement.  Thus, Mr. Carter is only permitted to recover under those sections of the Act by

which he is considered a "consumer," or the violation necessarily is against a person other than

the consumer.[7]  As such, Mr. Carter's claims under 15 U.S.C. § § 1692(c) and 1692(d) are proper

as they include persons beyond the consumer.  However, Plaintiff's claims on behalf of Mr.

---

[7] The Court notes, as Plaintiffs emphasize in their Memorandum in Opposition to Defendant's summary judgment motion, that the civil liability provision of the FDCPA states that "any debt collector who fails to comply with any provision of this subchapter with respect to *any person* is liable to such person."  15 U.S.C. § 1692k(a) (emphasis added).  Although the language of the section refers to recovery for "any person," the language is only used in recognition that there are violations under the Act which are not necessarily limited to only "consumers."  See e.g., 15 U.S.C. § 1692d.  Thus, the language does not "open the door" to all persons being eligible to collect pursuant to the Act, it simply refers to all persons otherwise eligible based on the alleged violation.  To allow relief for any and all persons would contravene the purpose and nature of the statute, as well as the language of the individual sections which individually delineate who is to be protected.

Carter pursuant to 15 U.S.C. § § 1692(e) and 1692(f) must be dismissed, as those portions of the Act do not delineate protection for any person, other then the actual "consumer."

**C.      Plaintiff's Pending Discovery Motions and Motion to Strike Defendant Countrywide's Answer**

Plaintiffs have filed several motions asserting that Defendant Countrywide has failed to comply with the Federal Rules of Civil Procedure and various court orders regarding discovery in the case.  (Docket Nos. 94, 95, 100, 129.)  Specifically, Plaintiff asserts that Countrywide has failed to make proper Rule 26(a)(1) disclosures; it has failed to produce any relevant documents; it has improperly responded to Plaintiff's interrogatories; and it has refused to participate in substantive, and required, "meet and confer" conferences regarding the discovery disputes.

Discovery closed on December 12, 2008 by the Court's initial Scheduling Order, but it was extended to January 14, 2009, by the Court for the limited purpose of allowing for the deposition of Defendant Countrywide's Federal Rule of Civil Procedure 30(b)(6) corporate designee, as well as the deposition of any Rule 30(b)(1) witnesses who were identified at that time, or would be identified as a result of the Rule 30(b)(6) deposition.  (Court Order dated December 18, 2008, Docket No. 90.)  On January 16, 2009, Plaintiff submitted their first motion(s) to compel and for sanctions, alleging numerous discovery violations by Countrywide, including its failure to produce a knowledgeable Rule 30(b)(6) deponent; failure to properly respond to Plaintiff's interrogatories; and failure to produce relevant documents.  (Pl.'s Mem. in Supp. Mot. to Compel, Docket No. 101, at 1-2.)  Defendant Countrywide responded to each of the accusations, representing that it had fully and properly responded to Plaintiff's discovery requests which had been relevant and not over broad; had properly asserted the attorney-client privilege in regards to certain litigation material; and, additionally, it asserted that Plaintiff had

also failed to properly respond to all of Countrywide's discovery requests. (Def.'s Mem. in Opp. To Mot. to Compel, Docket No. 104, at 7-24.)  Furthermore, Defendant asserted that the motions were untimely, as they should have been filed earlier in the discovery phase, particularly the portions relating to interrogatories and document requests.

The Court engaged in an extensive discovery conference with the parties and, as a result of the discussion and conflicting views of the parties as to the scope of the litigation, requested that Defendants submit a partial motion for summary judgment on the issue of the potential recovery of actual damages under the RESPA and FDCPA.  After denying the motion for summary judgment, finding that actual damages were permissibly recoverable under both statutes, the Court again conferred with the parties on the remaining discovery issues; and on May 5, 2009, entered an Order ("May Order") detailing a specific discovery plan to be complied with by the parties before the then-scheduled trial date.  (Docket No. 119.)

The purpose of the Court's May Order was to resolve the pending discovery disputes and to dictate how the parties were to conduct any remaining discovery.  The Court took Plaintiff's objections as to Countrywide's conduct under advisement, noting that while there may be merit to some of Plaintiff's claims, Plaintiff had also been untimely in filing their motions to compel, and had delayed late into the discovery period to notice deposition hearings.  The Court issued the May Order in response to Plaintiff's motions to as a method of hopefully providing each party a second chance to conduct certain discovery which the Court deemed to be relevant and necessary to the resolution of the case, and to resolve the continuous discovery "squabbles" which had, unfortunately, "derailed" the process.  The Order explicitly outlined how the parties were to proceed; including that any propounded discovery outside of the scope of the Order was impermissible without obtaining prior leave of Court.  (May 5, 2009 Order, Docket No. 119, at §

22

9.)

Less then two weeks after the Court's Order, Countrywide filed a Notice of Compliance with the Court, specifying what actions they had taken to fulfill their obligations pursuant to the Court's mandate. (Docket No. 121.)  Specifically, Countrywide asserted that they had re-propounded all of their discovery documents in a proper and readily-searchable format to Plaintiffs; they had updated their responses to Plaintiff's interrogatories; and it had provided detailed information as to why obtaining further information, or creating a more detailed privilege log based on duplicative information databases, would be unduly burdensome. (Countrywide's First Notice of Compliance, Docket No. 121, at 1-6.)  In support of Countrywide's compliance assertions, it attached several exhibits demonstrating its compliance with the May Order, including copies of the updated interrogatory answers; its, albeit, sparse privilege log; and the Declaration of a Countrywide official explaining the burden in producing or creating a privilege log for the "undiscovered" databases.  (Countrywide's First Notice of Compliance, Docket No. 121, at Exs. 1-4.)  Two days later, Countrywide submitted a Second Notice of Compliance with the May 5, 2009 Order, notifying the Court that it had obtained a copy of the February 1, 2002 Pooling and Servicing Agreement between the Department of Veterans Affairs, Countrywide Home Loans, Inc., and Bankers Trust Company of California, N.A. Defendant which it believed to be responsive to Plaintiffs' requests regarding the "practices and procedures of Countrywide in servicing accounts such as Plaintiffs.'"  (Countrywide's Second Notice of Compliance, Docket No. 122, at 1.)

The Court received no further submissions from Plaintiffs or Defendants, either in regard to discovery or other matters for almost two months thereafter.  On July 17, 2009, Countrywide filed its Motion for Summary Judgment, and on July 27, 2009, after Defendant's notices of

compliance with the May Order, and less than three weeks from the then-scheduled trial date, Plaintiffs submitted a motion requesting the Court to strike Defendant Countrywide's Answer and for sanctions for ongoing discovery violations.  (Docket No. 129.)  Specifically, the Plaintiffs incorporated their January motions to compel and for sanctions into their motion to strike, and further asserted that Defendant had continued to willfully violate discovery by failing to provide any new information or witnesses relevant to the case, as had been demanded.  (Pl.'s Mem. in Supp. Mot. to Strike, Docket No. 129, at 1-4.)

The  Court recognized that discovery was incomplete in the May 2009 time frame, with the fault being perhaps equally shared by the parties, and in an attempt to resurrect the matter for trial, while giving both parties the opportunity to complete discovery, the Court entered the May Order, as a corrective measure in an apparently vain effort to dictate the parameters for remaining discovery.  Shortly thereafter, Defendant Countrywide submitted their notices of compliance, with Plaintiff failing to respond to either until nearly two months later.

The Local Rules of this Court require that a party who has initiated discovery place the opposing party's non-compliance affirmatively before the Court by a motion to compel.  (Local Rule 37(A).)  Additionally, after the Court has ruled on a discovery motion, a party objecting to the failure of another party to comply with a discovery order granting relief is responsible for bringing such alleged non-compliance before the Court in a timely fashion.  (Local Rule 37(D).) Although there is no time frame set forth in the Local Rule for pursuing such a motion, it is clear that it should be done within a reasonable time period after discovering the violation, and should certainly be filed more than two and a half weeks before the scheduled trial date.  Such a delay suggests a failure to properly and effectively engage in what was, essentially, a second chance at the discovery process.

24

This matter has been pending in this Court for longer than any other case the Court has presided over in its tenure.  Meanwhile, the Plaintiffs have been permitted to remain in their residence by agreement of the parties, without having to contribute anything toward the indebtedness, even to be held in escrow pending resolution of the matter.  Now, the matter is reduced to claims involving the alleged violation of certain FDCPA mandates which are subject to a statutory "cap" of $1,000 for each violation unless Plaintiffs can establish a sufficient evidentiary foundation to prove higher actual damages pursuant to the Court's earlier ruling.  It is time to bring matters to a close.  While there may be reasonable objection with Defendant's discovery disclosures, Countrywide submitted two notices of compliance within two weeks of the discovery Order being issued, while Plaintiff failed to act upon the submissions within a reasonable time.  As such, Plaintiff's Motions to Compel, to Strike Defendant's Answer, and for Sanctions (Docket Nos. 94, 95, 100, 129) will be DENIED.

## IV.  CONCLUSION

For the reasons discussed herein, Plaintiff's Motion to Strike Countrywide's Second Motion for Summary Judgment (Docket No. 123) is DENIED; Countrywide's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART; and Plaintiff's Motions to Compel and Motions to Strike Defendant Countrywide's Answer and for Other Sanctions (Docket Nos. 94, 95, 100, 129) are DENIED.

An appropriate Order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: August 24, 2009